**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

JACKI BENNER,

        Plaintiff,

v.                                                                  CASE NO. 07-10788
                                                                                  HON. LAWRENCE P. ZATKOFF

KAPLAN TRUCKING CO.,                       MAG. DONALD A. SCHEER

        Defendant.
_____/

**OPINION AND ORDER**

AT A SESSION of said Court, held in the United States Courthouse,
in the City of Port Huron, State of Michigan, on May 14, 2008

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

**I. INTRODUCTION**

This matter comes before the Court on Defendant's Renewed Motion for Summary Judgment [dkt 21]. Defendant initially filed its Motion for Summary Judgment on November 5, 2007 [dkt 13]. Because of a disagreement between the parties regarding the issue of negligence, the Court granted Plaintiff leave to amend her Complaint on December 28, 2007. Defendant filed this Renewed Motion for Summary Judgment on February 28, 2008. Although Plaintiff did not respond to the Renewed Motion, the parties had fully briefed the original Motion for Summary Judgment. The Court finds that the facts and legal arguments are adequately presented in the parties' papers such that the decision process would not be significantly aided by oral argument. Therefore, pursuant to E.D. Mich. LR 7.1(e)(2), it is hereby ORDERED that the Motion be resolved on the briefs submitted. For the reasons set forth below, Defendant's Motion is DENIED.

**II. BACKGROUND**

On the morning of May 2, 2005, Marshall Bollinger, a truck driver for Defendant, picked up a load of steel coils from an Ohio facility. The coils were affixed to a leased flatbed trailer with chains that had been tightened with a wrench. Bollinger inspected the load before departing. One hour into his trip, Bollinger stopped for a cup of coffee at which time he again checked his load, confirming that the coils were still tightly secured and had not moved in any way. Bollinger then resumed his route, which led him to the Pennsylvania turnpike bearing east. While Bollinger attempted to negotiate a curve in the road, he contacted some debris in the road, resulting in a flat tire. Because of the flat tire, Bollinger lost control of the truck and collided with the barrier. Once he collided with the barrier, the steel coils shifted, broke the tie chains, and came off the trailer. Two of the coils slammed through the cement barrier that separated eastbound and westbound traffic, causing cement debris, and possibly the coil itself, to strike Plaintiff's vehicle, which was heading westbound on the turnpike.

The investigating officers determined that Bollinger was at fault for the accident, and they charged him with failing to keep a secure load under a Pennsylvania statute. Bollinger was not cited for any violations of the Federal Motor Carrier regulations. Paramedics at the accident scene tended to Plaintiff and her daughter, but hospitalization was not required for either woman. One week following the accident, Plaintiff sought chiropractic care from Larry Sutherland, D.C., for neck and back problems allegedly arising from the accident. Although Plaintiff was not employed prior to the accident, she obtained an employment position in an assisted-living center following the accident. Plaintiff left the position after one month, however, because her lingering back injuries prevented her from performing the job's responsibilities. Plaintiff's pain continued over the next year and increased in severity, especially in the lower back region. Sutherland, however, declared

Plaintiff completely asymptomatic with regard to the accident on June 13, 2005. Plaintiff later visited her primary physician, Thomas McKeon, M.D., who attributed her complaints of lingering neck pain to the accident. Cervical spine x-rays taken by McKeon on September 29, 2005, revealed some degenerative arthritis and a possible remote fracture. Plaintiff saw a neurologist, Steven Sherman, M.D., who noted signs consistent with carpal tunnel syndrome. A follow-up MRI was conducted on December 19, 2005, revealing degenerative changes in the intervertebral disks and spine but no fracture.

A MRI review on February 18, 2006, revealed that Plaintiff's disks were looking "better." Yet, on or around May 3, 2006—almost exactly one year following the accident—Plaintiff rushed to the hospital when she awoke in extreme pain and discovered that she could not move her right foot. Physicians at the St. Vincent Hospital in Toledo, Ohio, diagnosed Plaintiff with a dropped foot secondary to "huge extreme lateral disc rupture with spinal cord and nerve root compression at L4–L5." Neurosurgeon Edmond Lawrence, M.D., performed emergency surgery on May 5, 2006, and successfully removed the damaged disk. Leading up to the emergency surgery, Plaintiff received chiropractic adjustments from Sutherland on April 17, 24, 25, 26, 27, and 28, 2006. Beginning on April 26, 2006, Plaintiff had reported tingling in her right leg.

After four months of therapy, Plaintiff regained most of the use of her foot but continued to have persistent pain and was limited in her range of motion. None of her medical records indicate any physician-imposed physical restrictions. Since the accident, Plaintiff has apparently been diagnosed with post traumatic stress disorder and chronic pain syndrome; however, she has not provided the Court with any documentation in support of these diagnoses. Plaintiff has testified that, although she has made a "remarkable recovery," she cannot perform routine, daily tasks and cannot

tolerate sitting or standing for significant periods of time—all of which Plaintiff contends she was able to do prior to the accident. Prior to the accident, Plaintiff had a history of ankle, knee, hip, shoulder, and back problems. She sought chiropractic relief often throughout her adult life, including visits to Sutherland, dating back at least five years before the accident. Plaintiff underwent several unsuccessful knee surgeries. Testing revealed degenerative changes in both knees, and as of December 2004, McKeon believed that she developed osteoarthritis.

Plaintiff brings this suit under Michigan's No-Fault Insurance Act, alleging that Defendant is vicariously liable for the injuries Plaintiff suffered because of Bollinger's negligence. Specifically, Plaintiff maintains that she has suffered "serious injuries to her back, neck, and other parts of her body as well as other related and appreciable difficulties, injuries or consequences that have occurred, developed or aggravated any preexisting problem that might have existed."

### III. LEGAL STANDARD

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Thompson v. Ashe*, 250 F.3d 399, 405 (6th Cir. 2001). The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact, and all inferences should be made in favor of the non-moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

To support its motion, the moving party may show "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. Although all inferences must be drawn in favor of the nonmoving party, this Court bears no obligation to imagine favorable facts where the nonmoving party has alleged none. The moving party must also set forth facts sufficient to establish

4

its case: "[T]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient [to defeat a motion for summary judgment]; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

## IV. ANALYSIS

Plaintiff argues that, as a result of Bollinger's negligence, she has suffered a "serious impairment of body function," evidenced by the rupture of her L-4-L-5 disk and other "injury related conditions." In support, Plaintiff maintains that she is restricted in her neck movement, can no longer perform tasks that require her to sit or stand "for any length of time," and her "ability to work has been drastically reduced." Finally, Plaintiff contends that a genuine issue of material fact exists as to the nature and extent of her injuries.

Defendant concedes that there is a factual dispute concerning the nature and extent of Plaintiff's injuries but argues that such dispute is not material to the Court's determination of whether she suffered a serious impairment of body function as required by statute. Defendant maintains that Plaintiff has not demonstrated "an objectively manifested impairment of an important body function that has affected her general ability to lead a normal life as a result of the May 2, 2005, accident."

The Michigan No-Fault Insurance Act provides that an individual is liable for noneconomic loss arising out of the "ownership, maintenance, or use of a motor vehicle only if the injured person has suffered death, serious impairment of body function, or permanent serious disfigurement." Mich. Comp. Laws § 500.3135(1). For purposes of the statute, "serious impairment of body function" is defined as "an objectively manifested impairment of an important body function that affects the person's general ability to lead his or her normal life." *Id.* § 500.3135(7); *see also*

*Kreiner v. Fischer*, 683 N.W.2d 611, 624 (Mich. 2004). Movement of one's back is considered an important body function. *See McMullen v. Duddles*, 405 F. Supp. 2d 826, 838 (W.D. Mich. 2005); *Kreiner*, 651 N.W.2d at 628. Determining whether one is generally able to lead her normal life involves consideration of whether the course of her life has been affected; if "the course or trajectory of the plaintiff's normal life has not been affected, then the plaintiff's 'general ability' to lead [her] normal life has not been affected and [s]he does not meet the 'serious impairment of body function' threshold." *Kreiner*, 683 N.W.2d at 625.

The Michigan Supreme Court outlined the basic framework for assessing whether a plaintiff meets the threshold for tort recovery under the statute. First, the Court "must determine that there is no factual dispute concerning the nature and extent of the person's injuries; or if there is a factual dispute, that it is not material to the determination whether the person has suffered a serious impairment of body function." *Id.* Once the Court concludes that it is able to decide the issue as a matter of law, it "must next determine if an 'important body function' of the plaintiff has been impaired." *Id.* It is insufficient for the plaintiff to have suffered an impairment of an unimportant body function or to have suffered a mere injury—as opposed to impairment—of an important body function. The impairment must be objectively manifested, and subjective complaints lacking medical documentation are disregarded. *Id.*

If the Court determines that a plaintiff has suffered an impairment of an important body function that is objectively manifested, it must consider whether the impairment affects that plaintiff's general ability to lead her normal life. *Id.* at 625–26; *see also McDanield v. Hemker*, 707 N.W.2d 211, 215 (Mich. Ct. App. 2005). This presents a multifaceted inquiry to the Court, mandating an assessment of the plaintiff's life before and after the accident and the significance of

any impact on the course of the plaintiff's overall life. Although this determination is necessarily made on a case-by-case basis, the Michigan Supreme Court highlighted several nonexhaustive factors to consider: "(a) the nature and extent of the impairment, (b) the type and length of treatment required, (c) the duration of the impairment, (d) the extent of any residual impairment, (e) and the prognosis for eventual recovery." *Kreiner*, 683 N.W.2d at 626. Self-imposed restrictions are generally insufficient. *Id.* at 626 n.17.

In the present matter, the parties agree that a dispute exists as to the nature and extent of Plaintiff's injuries. In such situations, the Court may only proceed in deciding the case as a matter of law if the dispute "is not material to the determination whether the person has suffered a serious impairment of body function." *Id.* at 625. Causation is a factor in determining liability under the No-Fault Act. Mich. Comp. Laws § 500.3135(1) ("A person remains subject to tort liability for noneconomic loss *caused by* his or her ownership, maintenance, or use of a motor vehicle . . . .") (emphasis supplied). In *Lester v. Castle*, the plaintiff suffered injuries requiring medical treatment from a 2002 car accident. 2006 WL 1652730 (Mich. Ct. App. 2006). One year later, she endured another car accident and alleged new injuries. The trial court granted summary judgment for the defendant, opining that the plaintiff's injuries stemmed from the earlier car accident. The appellate court reversed the trial court on the basis that "an issue of fact exists with respect to whether plaintiff's shoulder injury arose from, or was aggravated by, the second accident." *Id.* at *2.

In addition to pain and physical limitations, Plaintiff suffered a ruptured disk approximately one year after the car accident. Although her chiropractor, Sutherland, previously opined that Plaintiff was completely asymptomatic from the car accident, he later attributed the ruptured disk to the accident. Dr. Lawrence, the neurosurgeon who performed the emergency surgery on Plaintiff,

7

noted that "following chiropractic adjustments, she has had really severe pain into her right leg that has now resulted in numbness in her big toe and weakness of her foot itself." Lawrence's notes state, however, that Plaintiff "feels . . . that this was coming on all along." Based on the materials presented, it is not clear to the Court whether Plaintiff's ruptured disk resulted from the car accident the previous year. At the very least, Plaintiff has presented a genuine issue of material fact as to whether her ruptured disk arose from the car accident.

Even if the Court were in a position to declare that Plaintiff's ruptured disk was unrelated to her car accident, a material question of fact would remain regarding whether Plaintiff suffered a serious impairment of body function. In *Pickens v. Prince*, 308 N.W.2d 178 (Mich. Ct. App. 1981), the court reversed the trial court's determination that the plaintiff suffered "mostly minor" injuries. In that case, the plaintiff incurred injuries to her neck, back, and shoulders from a car accident. She testified that "she received treatments immediately after the accident, that she continued to be under a doctor's care at the time of the hearing, and that she was instructed to stay off her feet. She further alleged that she cannot perform housework or lift anything and that she has headaches twice a week." *Id.* at 318. The court determined that the plaintiff had presented sufficient evidence that "there is at least a genuine issue of fact as to the extent of her injuries." *Id.*

In the present case, medical records indicate that, after the accident, Plaintiff suffered from neck pain that lingered for several months and that prevented Plaintiff from maintaining employment. McKeon's notes indicate restrictive motion of Plaintiff's neck. Other records establish that Plaintiff suffered from headaches. Like the plaintiff in *Pickens*, Plaintiff here has alleged various ailments such that "reasonable minds could differ on whether the plaintiff's injuries constituted a serious impairment of body function, even if there is no material factual dispute as to

the nature and extent of the plaintiff's injuries." *Petaja v. Guck*, 444 N.W.2d 209, 210 (Mich. Ct. App. 1989).

Taking the facts of the case in the light most favorable to Plaintiff, the Court finds that the dispute regarding the nature and extent of Plaintiff's injuries is material to the determination of whether Plaintiff has suffered a serious impairment of body function. Accordingly, the Court must deny Defendant's Renewed Motion.

## V. CONCLUSION

For the above reasons, Defendant's Renewed Motion for Summary Judgment is DENIED.

IT IS SO ORDERED.


                s/Lawrence P. Zatkoff
                LAWRENCE P. ZATKOFF
                UNITED STATES DISTRICT JUDGE

Dated: May 14, 2008

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on May 14, 2008.

                s/Marie E. Verlinde
                Case Manager
                (810) 984-3290